UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH URSO, | ) | 4:13CV0723 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | (Mag. Judge Kenneth S. Mchargh) |
| | ) | |
| WARDEN, GRAFTON CORR. INST., | ) | |
| | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | RECOMMENDATION |

McHARGH, MAG. JUDGE

The petitioner Keith Urso ("Urso") filed a petition pro se for a writ of habeas corpus arising out of his 2010 conviction in the Trumbull County (Ohio) Court of Common Pleas for operating a motor vehicle while under the influence of drugs or alcohol, and for operating a motor vehicle while under the influence of drugs or alcohol with a prior felony conviction.  (Doc. 1.)

In his petition, Urso raises three grounds for relief:

GROUND ONE:  A trial court commits reversible error when it fails to grant a criminal defendant's motion to suppress statements allegedly made to police in violation of his Miranda Rights, as guaranteed by section 10, Article I, of the Ohio Constitution and the fifth and fourteenth amendments to the United States Constitution.

GROUND TWO:  A trial court commits plain error when it fails to exclude statements allegedly made to police in violation of his Miranda Rights as guaranteed by section 10, Article I, of The Ohio Constitution

and the fifth and fourteenth amendments to The United States Constitution.

GROUND THREE:  The trial court errs and violates a criminal defendant's constitutional right to confront his accusers, where the court admits an audio recording of a 911 call based upon the declarant's supposed unavailability under Evid.R. 804(A)(4), where (1) the declarant has suffered a physical injury, but there is no allegation that such injury would affect his ability to remember or communicate, and (2), defense counsel has sought to depose the declarant but has been denied the opportunity to do so by the court.

(Doc. 1, at p. 2B.)  The respondent has filed a Return of Writ (doc. 7), and Urso has filed a Traverse (doc. 10).


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth a lengthy factual background, which is excerpted here:

Appellant [Urso] was indicted on two counts of OVI.  In count one, he was charged with operating a motor vehicle while under the influence of alcohol, having previously been convicted of a felony OVI, in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(e), a felony of the third degree, with a specification that he had previously been convicted of five or more OVI offenses in the last 20 years.  In count two, he was charged with operating a motor vehicle with a prohibited blood-alcohol concentration of .286, having previously been convicted of a felony OVI, in violation of R.C. 4511.19(A)(1)(h) and (G)(1)(e), a felony of the third degree, with a specification that he had previously been convicted of five or more OVI offenses in the last 20 years.  Appellant pleaded not guilty.

The state filed a motion to deny pretrial bail, pursuant to Article I, Section 9 of the Ohio Constitution and R.C. 2937.222.  Following a hearing, the court granted the state's motion.  Appellant appealed the court's ruling, and in State v. Urso, 11th Dist. No. 2010–T–0042,

2010-Ohio-2151, 2010 WL 1948329, this court affirmed the trial court's judgment granting the state's motion to deny pretrial bail.

Subsequently, appellant filed a motion to suppress the result of his breathalyzer test.  He also filed a motion in limine to prohibit the state from introducing any evidence regarding his admission of guilt.  Following hearings on the motions, the trial court denied both, and the case proceeded to jury trial.

On January 31, 2010, at approximately 12:45 p.m., Jack Beil was driving north on Bazetta Road in Mecca Township with his wife, Margaret Beil, about one-half mile south of State Route 88.  Mr. Beil observed a dark blue Chevrolet Corsica in front of them driving erratically.  Mr. Beil was so concerned about the driver's erratic driving that he called 9-1-1.  The state introduced a recording of Mr. Beil's 9-1-1 call, in which Mr. Beil said that there was a driver in front of him on Bazetta Road who was going to get into an accident because the driver was driving "all over both sides of the road." Mr. Beil said that the driver stopped in the middle of the road and then started moving again.  He said that there were oncoming cars driving on the opposite side of the road and he was concerned that the driver was going to hit them head-on.

Mr. Beil saw the driver, later identified as appellant, stop at a stop sign at the intersection of Bazetta Road and Route 88 near Monty's Restaurant.  In describing appellant to the dispatcher, Mr. Beil said, "I think it's a lady.  It's long hair." Appellant then turned east on Route 88 and pulled into Monty's parking lot and stayed in his car.  Mr. Beil told the 9-1-1 operator that he was going to stay at the stop sign at Bazetta Road and Route 88, to see if appellant stayed in his car.  Mr. Beil then pulled into Monty's parking lot, and told the dispatcher, "She, whatever it is [man or woman] was sitting there with her head back sleeping, clunked out.  So, I'll just sit here at Monty's and see * * * when [the sheriff's deputies] come."

Margaret Beil testified that while she was driving with her husband north on Bazetta Road, a car pulled out in front of them.  Appellant was driving slowly, so they had to slow down.  Appellant went off the right side of the road.  He then returned to the road, crossed the center line, just missing the ditch, then returned to their lane of travel and stopped in the middle of the road.  Mrs. Beil had then called 9-1-1 and passed the phone to Mr. Beil, who spoke to the dispatcher.

Mrs. Beil testified that the car resumed moving, crossed the center line again, and was driving in the wrong lane and in the wrong direction. Two cars were driving in that lane heading toward appellant, and he almost hit them.  Appellant stopped again, sat in the road for awhile, and then resumed driving.

The dispatcher said that she had notified the sheriff's deputies, and Mr. Beil said he would stay with appellant until the deputies arrived. Mrs. Beil then saw appellant stop at the stop sign at Route 88 for four to five minutes.

Mrs. Beil testified that as they had gotten closer to the vehicle, she had been able to see that the driver had long hair and she thought he might have been a woman.  She said that while still stopped at the stop sign, she saw appellant pull into Monty's.  Appellant parked his vehicle in the parking lot, put his head back on the head rest, and just sat there.  Mr. Beil then drove into Monty's parking lot and parked beside appellant.  Mrs. Beil said that except for a few seconds when a pick-up truck passed by appellant's car, she was able to see appellant the entire time from when he was stopped at the stop sign to when he parked at Monty's.  Mrs. Beil said that during this entire period, appellant had his head back on the head rest, no one else was in his car, and he did not drink anything.

Mrs. Beil said they were in the parking lot for about two minutes when a park ranger arrived.  She then got out of the car to see if the driver was a man or a woman.  Mrs. Beil and the ranger approached appellant's vehicle, and Mrs. Beil saw that the driver, who was still sitting behind the wheel, was a man.  The ranger asked the Beils to leave the area and said they would be contacted later for their statements.

Frank Tomaino, a park officer with the Ohio Department of Natural Resources, testified that he had responded to the dispatch report of an erratic driver who was then in the parking lot of Monty's Restaurant. As Officer Tomaino pulled into the parking lot, he observed the described vehicle, which was still running, and pulled in behind it.

Tomaino approached the car from the driver's side and saw appellant in the driver's seat with his head against the seat rest with his mouth open and eyes closed.  The officer tried to wake him by pounding on the window.  When appellant eventually  awoke, he was incoherent.  The officer yelled at him to unlock the door.  Appellant could not find the

4

electric door lock.  He was fumbling with the controls on the door panel and had the back window going up and down.  When the window was down, the officer smelled a strong odor of alcoholic beverage coming from inside the car.

Appellant turned around and unlocked the back door.  Tomaino opened the back door, reached in and unlocked the front door, opened that door, shut off the car, pulled the keys out of the ignition, and pulled appellant out of the car.  Appellant's speech was slurred.  He was unable to respond to the officer's questions or to produce his driver's license.  He could not stand on his own and was leaning against the car.

Ron Carr, deputy with the Trumbull County Sheriff's Department, testified that when he arrived at the scene, Tomaino gave him the keys to appellant's vehicle and told him that he had found appellant passed out behind the wheel.

Deputy Carr testified that the driver was again sleeping in his vehicle.  When asked to exit, appellant stepped out of his car and started to fall.  Deputy Michael Davis caught him and held him up because appellant could not stand on his own.  While Carr was talking to appellant, he smelled a strong odor of alcohol on him.  Appellant slurred his speech, was swaying, and could not keep his balance.

Carr said that due to appellant's level of intoxication, he could not stand on his own.  As a result, the deputies did not administer any field sobriety tests on him.  Appellant was arrested for OVI.  He was handcuffed, searched, and placed into Davis's cruiser.  Davis then transported appellant to the Sheriff (Sheriff) Department's substation located in the Mecca Township Fire Department.

Carr testified that he remained on the scene and inventoried appellant's car.  He found eight cans of beer strewn throughout the interior.  Some of the cans were empty, two were unopened, and one near the center console was open and half full.

(Doc. 7, RX 2 at 2-6; State v. Urso, 195 Ohio App.3d 665, 669-672, 961 N.E.2d 689, 692-694 (Ohio Ct. App. Sept. 16, 2011).)

At the sheriff's station, Urso was handed BMV Form 2255, advising him that he was under arrest for OVI, and of the consequences of refusing to take a blood-alcohol-content test.  Urso said he understood the provisions of the form, agreed to take the test, and signed the form.  State Trooper Brooke Sexton arrived to administer the breathalyzer test to Urso.  (Doc. 7, RX 2 at 6; Urso, 195 Ohio App.3d at 672, 961 N.E.2d at 694.)

> Sexton testified that although Carr had already read to appellant [Urso] BMV form 2255, she also explained to him the consequences of a refusal to take the test.  She then asked appellant if he would take the test, and he said, "I'll take your test.  I did it.  I'm guilty so I'll take it."  Sexton asked him to stand to take the test, but he began to fall and caught himself on the wall.  At that time, the trooper detected a strong odor of alcoholic beverage on appellant and saw that he also had glassy eyes.
>
> Sexton administered the BAC DataMaster test to appellant.  His test indicated a blood-alcohol concentration of .286, more than three times the legal limit.

(Doc. 7, RX 2 at 7; Urso, 195 Ohio App.3d at 673, 961 N.E.2d at 695.)

> The case was submitted to the jury, which returned a verdict finding appellant [Urso] guilty of OVI on both counts of the indictment, each with a prior felony OVI conviction.  The jury also found appellant guilty of the repeat-OVI-offender specification attached to each count.
>
> At appellant's sentencing hearing, the trial court noted that appellant has been convicted of 15 OVI offenses, including the instant case, and that he has been convicted of 31 moving violations.  The court also noted that appellant had previously been convicted of vehicular homicide of a young girl on a hay ride as a result of driving while intoxicated.  Although his driver's license has been suspended for the last 28 years, appellant has repeatedly driven vehicles while under suspension.  The court noted that appellant has demonstrated a pattern of alcohol abuse, which he refuses to acknowledge or treat, and that he has shown no genuine remorse.

* * * * * *

The court noted that  appellant is a danger to the community at large and specifically to all motorists.  The court sentenced appellant on both counts to five years in prison and to five years on the repeat-OVI-offender specification, the two terms to be served consecutively. The court then merged both counts and specifications, for a total of ten years in prison.  The court also revoked and permanently suspended appellant's driver's license.

(Doc. 7, RX 2 at 8-9; Urso, 195 Ohio App.3d at 673-674, 961 N.E.2d at 695.)


### A.  Motion for New Trial

Prior to sentencing, Urso had filed a motion for a new trial on Nov. 16, 2010,

based on eight assignments of error:

> 1.  The Court denied the Defendant's request to take the two witnesses depositions.
>
> 2.  The Court allowed testimony into the trial without the ability of the Defendant to cross examine said testimony.
>
> 3.  The Court further erred in disbursing copies of the redacted transcript of the 9-1-1 tape before allowing the Defendant and his Attorney a chance to review said document.  Also, there was no mention on the record that the transcript was going to be supplied to the jury.  This was all done with no notice to the defendant.  Also let it be noted that the transcript was the first thing requested by the jury during deliberations.
>
> 4.  The  Court prevented the Defendant from using his expert witness because there was no report filed, however, allowed the Prosecutor to have an expert witness without filing a report.
>
> 5.  Also, the Court wanted to conduct a Daubert hearing in relation to the Defendant's expert who was trained in electronics but then allowed

the States witness to testify who has a Philosophy degree and had
been a dry cleaner by trade.

6.  The Court also allowed that some [sic] witness to mislead the jury
in that the Datamaster in question had an internal protector against
low voltage current.

7.  The Court further allowed the State Patrol witness to unfairly
mislead the jury by changing her story in that she personally observed
the Defendant for 20 minutes, when clearly she hadn't, and then tried
to say that it was a combined observation.  Clearly that was not
possible because there was no one else present that was certified to
observe the Defendant.

8.  The Court also erred in not allowing the Defendant to introduce the
records of the Datamaster that were subpoenaed by the Defendant.
These records showed that over the years this machine had been
broken and was out of order.  However, there was no record of the
machine being repaired as required to be kept by State regulations.

(Doc. 7, RX 13.)  On Nov. 22, 2010, the trial court denied the motion for a new trial,

finding that (1) the motion was untimely filed, and (2) the motion was not well-

taken on the merits as argued.  (Doc. 7, RX 15.)  Urso did not appeal that

determination.


B.  Direct Appeal

On Jan. 13, 2011, Urso appealed his conviction, presenting seven

assignments of error:

1.  The trial court erred by denying the appellant's motion to suppress
the results of the BAC Datamaster test where the operation of the
Datamaster was in substantial violation of its prescribed instructions.

2.  The trial court erred by denying the appellant's motion to suppress
his alleged statement.

8

3. The trial court committed plain error by not excluding testimony that appellant allegedly admitted some sort of guilt.

4. The trial court erred by admitting the 911 recording, over objection, in violation of appellant's right to confront the witnesses against him, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

5. The trial court abused its discretion by denying appellant's motion for a mistrial.

6. The trial court abused its discretion by excluding evidence concerning the calibration of the BAC Datamaster.

7. The appellant's convictions are against the manifest weight of the evidence.

(Doc. 7, RX 16-17.) The court of appeals affirmed Urso's conviction on Sept. 16, 2011. (Doc. 7, RX 2; Urso, 195 Ohio App.3d 665, 961 N.E.2d 689.)

Urso then filed an appeal to the Supreme Court of Ohio, setting forth six propositions of law:

1. A trial court commits reversible error when it fails to grant a criminal defendant's motion to suppress the results of a breach [sic] alcohol content test, where the machine used to test such was plugged into an outlet it shared with a refrigerator, in express violation of the user's manual for the machine, to the prejudice of the defendant.

2. A trial court abuses its discretion by excluding evidence of the records of a machine used to measure breath alcohol content, where said records are required, by state law, to be maintained, where said machine is used to test the defendant, and where the results of said test are introduced against the defendant.

3. A trial court commits reversible error when it fails to grant a criminal defendant's motion to suppress statements allegedly made to police in violation of his or her Miranda rights, as guaranteed by Section 10, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

4.  A trial court commits plain error when it fails to exclude statements allegedly made to police in violation of his or her Miranda rights, as guaranteed by Section 10, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

5. A trial court errs and violates a criminal defendants constitutional right to confront his accusers, where the court admits an audio recording of a 911 call based upon the declarant's supposed unavailability under Evid.R. 804(a)(4), where (1) the declarant has suffered physical injury, but there is no allegation that such injury would affect his ability to remember [or] communicate, and (2) defense counsel has sought to depose the declarant, but has been denied the opportunity to do so by the court.

6.  A trial court abuses its discretion by failing to grant a criminal defendant's motion for a mistrial, permitting the publication of a transcript, prepared by police authorities, of a 911 recording, where the audio recording of that call contains inaudible and only partially audible portions which are transcribed as definite statements.

(Doc. 7, RX 19-20.)  On February 1, 2012, the Supreme Court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 7, RX 22; State v. Urso, 131 Ohio St.3d 1440, 960 N.E.2d 988 (2012).

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court. The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts. Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2002). See also Lorraine v. Coyle, 291

F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v.

Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court

considers the state decision to be erroneous or incorrect. Rather, the federal court

must determine that the state court decision is an objectively unreasonable

application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Several of the grounds put forward by Urso allege violations of the Ohio

Constitution. The question before this federal habeas court is whether the state

11

court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of the Ohio Constitution is not properly before this court. *See Lewis v. Jeffers, 497 U.S. 764, 780 (1990)*.

Urso has filed his petition pro se. The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)). Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III. ALLEGED MIRANDA VIOLATION(S)

The respondent asserts that the first and second grounds of the petition are interrelated, and should be addressed together. (Doc. 7, at 16.) The state court of appeals addressed Urso's corresponding second and third assignments of error together, as follows:

> As noted above, when Trooper Sexton asked appellant if he was willing to take the breathalyzer test, he responded, "I'll take your test. I did it. I'm guilty so I'll take it." Appellant argues that the court erred in

12

denying his motion to suppress his statement to Sexton because he was not given Miranda warnings.

In denying appellant's motion, the trial court found:

"Under the circumstances of the present case, the Court does not find a Miranda warning was required in relation to the questions prior to the administration of the breathalyzer test.  First, the questions were akin to routine administrative queries specifically tailored to the test itself. Trooper Sexton testified she communicated with the Defendant only in relation to the administration of the breathalyzer test and its consequences.  Trooper Sexton explained she is required to provide this preamble to every person prior to administering the test.  Following the explanation of the test, Trooper Sexton asked the Defendant if he wanted to take the test.  She stated it is necessary to ask this question in order to insure the Defendant is voluntarily submitting to the test. It was in response to this question, whether the Defendant would voluntarily take the test, that the Defendant replied in the affirmative and expounded further, 'I'm guilty.'

"The rationale behind the requirement for Miranda warnings prior to custodial interrogation is to avoid the use of improper intimidation tactics to elicit an inaccurate response.  Miranda [v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694].  There was nothing intimidating about Trooper Sexton's discussion with the Defendant. The conversation was strictly related to the breathalyzer test, the consequences of taking or not taking the test, and the voluntary option of the Defendant to submit to the test.  The question posed to the Defendant only required a simple yes or no answer.  This query was not reasonably likely to elicit an incriminating statement by the Defendant.  The Defendant chose to expound with a voluntary utterance outside the scope of a custodial interrogation and therefore, the statement is not subject to suppression."

As a preliminary matter, we do not agree with the state's contention that because appellant labeled his motion as a motion in limine, rather than a motion to suppress, he was required to object to the introduction of his statement at trial in order to preserve the error for appeal.  While we are mindful of the Supreme Court of Ohio's holding in State v. Hill (1996), 75 Ohio St.3d 195, 202–203, 661 N.E.2d 1068, that the denial of a motion in limine does not preserve a claimed error for review in the absence of an objection at trial, the motion in limine in Hill sought to limit the prosecution's argument; it did not seek to

exclude evidence allegedly obtained in violation of the defendant's constitutional rights. Appellant stated in his motion that he sought "to prohibit the State from introducing any evidence of the Defendant's statements made prior to him being advised of his rights." He therefore clearly sought the suppression of evidence, rather than a pretrial ruling on an evidentiary issue. The trial court understood this to be the case because, in its judgment ruling on the motion, the court referred to appellant's motion as a "motion in limine to suppress the statements made by the Defendant." Thus, although appellant inartfully titled his motion as a motion in limine, in effect, appellant's motion was a motion to suppress and shall be treated as such. "The determination of whether a motion is a 'motion to suppress' or a 'motion in limine' does not depend on what it is labeled. It depends on the type of relief it seeks to obtain." State v. Davidson (1985), 17 Ohio St.3d 132, 135, 17 OBR 277, 477 N.E.2d 1141.

Turning now to the merits of appellant's argument, this court's holding in State v. McCauley, 11th Dist. No. 2010–T–0015, 2010-Ohio-6446, 2010 WL 5550233, discretionary appeal not allowed at 128 Ohio St.3d 1461, 2011-Ohio-1829, 945 N.E.2d 524, is controlling. In McCauley, this court held that when a police officer asks a defendant, following his arrest for OVI, if he would submit to a breathalyzer test and the defendant volunteers that he is intoxicated, the officer's question does not amount to custodial interrogation and the defendant is not entitled to Miranda warnings before responding. Id. at ¶ 19–26.

Applying these principles to the instant case, Trooper Sexton did not ask appellant if he had been drinking, how much he had had to drink, when he consumed his last alcoholic beverage, whether he was drunk, or whether he was guilty of the charge. She simply explained to him the consequences of a refusal to take the test and then asked him if he wanted to take the test. She said this is a procedural question that she is required to ask defendants arrested for OVI because they have a choice whether or not to take the test.

As in McCauley, 2010-Ohio-6446, 2010 WL 5550233, while appellant was in custody, Sexton's question about taking the breath test was not designed to elicit an incriminating response. Appellant gave a nonresponsive answer to the trooper's question and thus volunteered information that was not requested. In these circumstances, appellant was not subject to custodial interrogation, and he was therefore not entitled to the Miranda warnings before giving his unsolicited response. We do not agree with appellant's contention, which is

14

unsupported by reference to any authority, that because the trooper explained to appellant the consequences of a refusal to take the test, this turned the exchange into a custodial interrogation. We therefore hold that the trial court did not err in denying appellant's motion in limine to suppress his statement to Sexton.

Appellant's second and third assignments of error are overruled.

(Doc. 7, RX 2, at 13-16; Urso, 195 Ohio App.3d at 677-678, 961 N.E.2d at 698-699.)

The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Although the state court recognized that the Supreme Court's decision in Miranda was at issue, the court asserted that its decision was controlled by an unpublished state court appellate decision, *State v. McCauley*, No. 2010-T-0015, 2010 WL 5550233, at *3 (Ohio Ct. App. Dec. 23, 2010). (Doc. 7, RX 2, at 15; Urso, 195 Ohio App.3d at 678, 961 N.E.2d at 699.) The McCauley decision, in turn, relied on *Miranda v. Arizona*, 384 U.S. 436 (1966) and Rhode Island v. Innis, 446 U.S. 291 (1980), so the issue is whether the state court decision involved an unreasonable application of clearly established federal law.

A. Miranda and Related Cases

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." *Withrow v. Williams*, 507 U.S. 680, 688 (1993) (quoting U.S. Const. amend. V.) The Supreme Court has held that the

Fifth Amendment's Self-Incrimination Clause is incorporated in the Due Process

Clause of the Fourteenth Amendment, and thus applies to the States. *Dickerson v.*

*United States*, 530 U.S. 428, 434 (2000) (citing *Malloy v. Hogan*, 378 U.S. 1, 6-11

(1964)); *Withrow*, 507 U.S. at 688-689.

To safeguard the privilege against self-incrimination, the Supreme Court in

*Miranda v. Arizona* laid down "concrete constitutional guidelines" which would

govern the admissibility of any statement given during the custodial interrogation

of a criminal suspect. The admissibility of such a statement depends "on whether

the police provided the suspect with four warnings," specifically, "the right to

remain silent, that anything he says can be used against him in a court of law, that

he has the right to the presence of an attorney, and that if he cannot afford an

attorney one will be appointed for him prior to any questioning if he so desires."

*Dickerson*, 530 U.S. at 435 (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)).

The Supreme Court recently affirmed that "*Miranda* and its progeny in this

Court govern the admissibility of statements made during custodial interrogation in

both state and federal courts." *Dickerson*, 530 U.S. at 432. The Court has defined

"custodial interrogation" as "questioning initiated by law enforcement officers after

a person has been taken into custody or otherwise deprived of his freedom of action

in any significant way." *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004) (quoting

*Miranda*, 384 U.S. at 444); *Thompson v. Keohane*, 516 U.S. 99, 107 (1995)

16

The police obligation to administer *Miranda* warnings is dependent on whether a person is "in custody." *Yarborough*, 541 U.S. at 661; *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). Two discrete inquiries are essential to the determination of custody: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Yarborough*, 541 U.S. at 663 (quoting *Thompson*, 516 U.S. at 112).

Although the state court did not explicitly address the issue of custody, the court notes that Urso was arrested for OVI, handcuffed, and transported to the sheriff's substation. (Doc. 7, RX 2, at 6; Urso, 195 Ohio App.3d at 672, 961 N.E.2d at 694.) Thus, there seems to be no dispute that Urso was in custody at the relevant time, and would have been entitled to Miranda warnings if he was going to be interrogated.

The Supreme Court in Rhode Island v. Innis pointed out that not all statements obtained by the police after a person has been taken into custody are considered the product of interrogation. Innis, 446 U.S. at 299. The Court quoted Miranda to the effect that: "The fundamental import of the [Fifth Amendment] privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." Innis, 446 U.S. at 300 (quoting Miranda, 384 U.S. at 478). The Innis

17

Court stated it was clear "that the special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." Innis, 446 U.S. at 300.

In Pennsylvania v. Muniz, the Supreme Court concluded that Miranda did not require suppression of statements the defendant made when asked to submit to a breathalyzer examination. Pennsylvania v. Muniz, 496 U.S. 582, 604 (1990). The Court found that the defendant's statements were not prompted by an interrogation within the meaning of Miranda. Muniz, 496 U.S. at 605; see also United States v. Woods, 711 F.3d 737, 743 (6th Cir. 2013) (discussing Muniz). The context in which the defendant had made incriminating statements was recounted as follows:

> . . . Officer Deyo carefully limited her role to providing Muniz with relevant information about the breathalyzer test and [Pennsylvania's] Implied Consent Law. She questioned Muniz only as to whether he understood her instructions and wished to submit to the test. These limited and focused inquiries were necessarily "attendant to" the legitimate police procedure, see Neville, supra, at 564, n. 15, 103 S.Ct., at 923, n. 15, and were not likely to be perceived as calling for any incriminating response.

Muniz, 496 U.S. at 605; see also Priest v. Hudson, 655 F.Supp.2d 808, 826 (N.D. Ohio 2009) (discussing Muniz). The Court found his statements to be voluntary.

The respondent argues that the state court reasonably interpreted the facts, properly applied the correct federal precedent, and reasonably determined that Urso's Miranda claims lacked merit. (Doc. 7, at 20.) The respondent asserts that Urso was not subjected to a custodial interrogation, thus Miranda was not

18

implicated.  Urso's statement was voluntary and uncoerced, consequently it was not a constitutional error to admit his statement into evidence.  Id. at 21.

Urso asserts there is no question that he was in custody at the time of his contested statement.  (Doc. 10, at [2].)  He contends that Trooper Sexton's questions went beyond ministerial issues and "constituted an interrogation of a suspect clearly in custody."  Id. at [2]-[3].  In his Traverse, Urso does not expand on that, but on appeal he had argued that, because Trooper Sexton had explained and elaborated on the consequences of taking or refusing to take the breath test, that transformed her interaction with Urso into a custodial interrogation.  (Doc. 7, RX 17, at 9.)

The state court of appeals was not convinced by this line of argument, and ruled that:

> . . . Trooper Sexton did not ask appellant if he had been drinking, how much he had had to drink, when he consumed his last alcoholic beverage, whether he was drunk, or whether he was guilty of the charge.  She simply explained to him the consequences of a refusal to take the test and then asked him if he wanted to take the test.

(Doc. 7, RX 2, at 16; Urso, 195 Ohio App.3d at 678, 961 N.E.2d at 699.)  At that point, Urso made his statement to the trooper.  Urso does not point to any testimony contradicting the state court's factual assertions.  See generally, doc. 7, transcript, vol. 2, at 102-103, 105.

The state court found that the trooper's question about taking the breath test was not designed to elicit an incriminating response, and thus Urso was not entitled

19

to Miranda warnings before giving his unprompted admission.  (Doc. 7, RX 2, at 16;
Urso, 195 Ohio App.3d at 678, 961 N.E.2d at 699.)  This court does not find that the
state court decision runs afoul of Supreme Court precedent.  See, e.g., Muniz, 496
U.S. at 605; Woods, 711 F.3d at 743.

Urso has failed to demonstrate that the state court decision involved an
unreasonable application of clearly established federal law, as determined by the
Supreme Court of the United States.  The petition should not be granted on the
basis of the first or second grounds of the petition.


## IV.  CONFRONTATION CLAUSE

The third ground of the petition is:

> The trial court errs and violates a criminal defendant's constitutional
> right to confront his accusers, where the court admits an audio
> recording of a 911 call based upon the declarant's supposed
> unavailability under Evid.R. 804(A)(4), where (1) the declarant has
> suffered a physical injury, but there is no allegation that such injury
> would affect his ability to remember or communicate, and (2), defense
> counsel has sought to depose the declarant but has been denied the
> opportunity to do so by the court.

(Doc. 1, at p. 2B.)

Urso presented this issue on direct appeal as part of his fourth assignment of
error:  "The trial court erred by admitting the 911 recording, over objection, in
violation of appellant's right to confront the witnesses against him, as guaranteed
by the Sixth and Fourteenth Amendments of the United States Constitution."  (Doc.
7, RX 17, at 12.)  Urso framed the issue for review as follows:

Whether a trial court errs and violates a criminal defendants constitutional right to confront his accusers, where the court admits an audio recording of a 911 call based upon the declarant's supposed unavailability under [Ohio] Evid.R. 804(A)(4), where (1) the declarant has suffered physical injury, but there is no allegation that such injury would affect his ability to remember or communicate, and (2) defense counsel has sought to depose the declarant, but has been denied the opportunity to do so by the court.

(Doc. 7, RX 17, at 12.)

The state court of appeals overruled the fourth assignment of error, ruling as

follows:

Appellant argues that the trial court erred in finding Mr. Beil to be unavailable to testify at trial, in admitting the recording of Mr. Beil's 9-1-1 call, and in denying his request for an order to compel Mr. Beil to submit to a deposition.  He claims these rulings violated his right to confront witnesses against him.  We do not agree.

We review the admission or exclusion of evidence under an abuse-of-discretion standard.  State v. Finnerty (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233.  This court has recently stated that the term "abuse of discretion" is one of art, connoting judgment exercised by a court that does not comport with reason or the record.  State v. Hendrex, 11th Dist. No. 2010–T–0103, 2011-Ohio-1588, 2011 WL 1225608, at ¶ 28.

During a pretrial hearing on October 22, 2010, three days before trial, the prosecutor advised the court and counsel that Mr. Beil, who was then 73 years old, had recently been seriously injured in a fall from a ladder while cutting a tree branch.  He broke his tibia, fibula, and pelvis.  He was treated at Trumbull Memorial Hospital, Hillside Hospital, and the Cleveland Clinic.  A bone-straightening device had been attached to both sides of his leg.  Screws were placed through the bone, wire, and a metal frame apparatus.  The prosecutor reported that it was difficult and painful for Mr. Beil to move, and he could not sit or lie flat for any length of time.  The prosecutor said that he had previously offered to have Mr. Beil picked up by ambulance for his trial testimony and he had agreed.  However, the prosecutor said that when he called Mr. Beil on October 22, 2010, he said he was not able to come to court to testify.  He said he had had an emergency colonoscopy and

21

was having issues with bowel movements.  The prosecutor said he asked Mr. Beil if he would give a deposition in his home, but Mr. Beil said he would not agree to a deposition, because he did not want appellant to know where he lived.

The trial judge asked the prosecutor to ask Mr. Beil again if he would consent to a deposition.  The judge said that if Mr. Beil would not agree, the court would declare him to be unavailable, and the court would then hold a hearing regarding whether the recording of Mr. Beil's 9-1-1 call would be admissible at trial.  On the day of trial, October 25, 2010, the prosecutor advised the court and counsel that Mr. Beil would not consent to a deposition.  Following a hearing, the court found Mr. Beil to be unavailable pursuant to Evid.R. 804(A)(4) due to serious injury.  The court also found the recording was admissible pursuant to Davis v. Washington (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224.

First, appellant argues that the trial court erred in finding that Mr. Beil was unavailable to testify at trial because Mr. Beil had previously agreed to testify but then changed his mind.  However, the record is clear that Mr. Beil refused to testify due to his physical condition.  Based on the undisputed representations of the prosecutor regarding Mr. Beil's condition, as confirmed by Mrs. Beil during her trial testimony, the trial court did not abuse its discretion in finding that Mr. Beil was unavailable.

Moreover, in Davis, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the admission only of testimonial statements of a witness who did not appear at trial.  Id. at 821, 126 S.Ct. 2266, 165 L.Ed.2d 224.  The court held that statements are nontestimonial, and therefore not subject to exclusion, when they are made to enable police to meet an ongoing emergency.  Id. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224.  In contrast, statements are testimonial when there is no ongoing emergency and they are made to prove past events relevant to later criminal prosecution.  Id.

Here, Mr. Beil contemporaneously reported to 9-1-1 that appellant was driving erratically, crossed the center line, and almost hit two vehicles driving in the opposite direction.  Mr. Beil and his wife were driving behind appellant and were therefore exposed to his reckless and dangerous driving.  Mr. Beil provided this information to allow police to address an ongoing emergency.  Thus, the trial court did not abuse

its discretion in finding the recording of Mr. Beil's 9-1-1 call to be admissible pursuant to Davis.

We further note that the recording would also have been admissible as a present-sense impression. Evid.R. 803, "Hearsay exceptions; availability of declarant immaterial," provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness."

Here, during his 9-1-1 call, Mr. Beil described appellant's reckless driving as he was perceiving it. It was therefore a present-sense impression. Ohio courts have held that "911 calls are generally admissible as excited utterances or present sense impressions." State v. Johnson, 10th Dist. No. 08AP–652, 2009-Ohio-3383, 2009 WL 2003398, at ¶ 22.

In any event, even if the recording of Mr. Beil's 9-1-1 call were not admissible, Mrs. Beil's trial testimony was basically the same as Mr. Beil's 9-1-1 call, and therefore any error resulting from the admission of the recording would have been harmless beyond a reasonable doubt.

Finally, we do not agree with appellant's argument that the trial court erred in denying his request to take Mr. Beil's deposition. This court has held: "The general rule in Ohio is that a defendant has no right to interview, depose or examine a state's witness prior to trial without the consent of the witness, as long as the prosecution has not unduly interfered with the free choice of the witness." State v. Dietz (July 29, 1988), 11th Dist. No. 12–192, 1988 WL 81337, citing State v. Zeh (1987), 31 Ohio St.3d 99, 31 OBR 263, 509 N.E.2d 414. Here, there is no evidence, and appellant does not argue, that the prosecutor had anything to do with Mr. Beil's decision not to be deposed by appellant. In fact, appellant concedes that Mr. Beil refused to submit to deposition.

(Doc. 7, RX 2, at 17-20; Urso, 195 Ohio App.3d at 679-681, 961 N.E.2d at 700-701.)

Because the state court identified the relevant Supreme Court precedents, the issue

before this habeas court is whether the state court decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

The Confrontation Clause of the Sixth Amendment provides an accused with the right to be confronted with the witnesses against him. Crawford v. Washington, 541 U.S. 36, 42 (2004); Pointer v. Texas, 380 U.S. 400, 406 (1965). A central purpose of the Confrontation Clause is to allow the defendant the opportunity to cross-examine the witnesses against him. Vasquez v. Kirkland, 572 F.3d 1029, 1035-1036 (9th Cir. 2009), cert. denied, 558 U.S. 1126 (2010) (citing Davis v. Alaska, 415 U.S. 308, 315-316 (1974)); Drake v. Woods, 547 F.Supp.2d 253, 264 (S.D. N.Y. 2008).

Crawford clarified that the Confrontation Clause requires that testimonial statements of witnesses absent from trial are properly admitted only where the declarant is unavailable, and where the defendant has had a opportunity to cross-examine. Crawford, 541 U.S. at 59, 68. The protection of the Confrontation Clause is not subject to "the vagaries of the rules of evidence" concerning hearsay. Crawford, 541 U.S. at 61.

The Crawford Court did not undertake a comprehensive definition of "testimonial," but noted that, at a minimum, it covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Crawford, 541 U.S. at 68; United States v. Cromer, 389 F.3d 662,

24

672 (6th Cir. 2004). Testimony may also be defined as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Cromer, 389 F.3d at 672 (quoting Crawford, 541 U.S. at 51). The Court has asserted that only "testimonial statements," and not other types of hearsay, are subject to the Confrontation Clause. Davis v. Washington, 547 U.S. 813, 821 (2006).

In Davis v. Washington, the Supreme Court addressed whether certain types of statements were "testimonial" under Crawford. Davis found that statements in the course of police interrogation are non-testimonial where "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." United States v. Arnold, 486 F.3d 177, 187 (6th Cir. 2007) (en banc), cert. denied, 552 U.S. 1103 (2008) (quoting Davis, 547 U.S. at 822); see also Colon v. Taskey, No. 09-3808, 2010 WL 4569877, at *2 (6th Cir. Nov. 4, 2010), cert. denied, 131 S.Ct. 1482 (2011). A statement is "testimonial" where the primary purpose of the interrogation "is to establish or prove past events potentially relevant to later criminal prosecution." Arnold, 486 F.3d at 187 (quoting Davis, 547 U.S. at 822).

The Sixth Circuit has pointed out that Davis, in part, applied the "testimonial" analysis to statements to 911 operators:

> "A 911 call ... and at least the initial interrogation conducted in connection with a 911 call," the Court held, "is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance."

Arnold, 486 F.3d at 187-188 (quoting Davis, 547 U.S. at 822). In Davis, for example, the victim "was speaking about events as they were actually happening,

25

rather than describing past events." Colon, 2010 WL 4569877, at *3 (citing Davis, 547 U.S. at 828).

> The state court here grasped that critical distinction, and noted:
>
> Here, Mr. Beil contemporaneously reported to 9-1-1 that appellant was driving erratically, crossed the center line, and almost hit two vehicles driving in the opposite direction. Mr. Beil and his wife were driving behind appellant and were therefore exposed to his reckless and dangerous driving. Mr. Beil provided this information to allow police to address an ongoing emergency. Thus, the trial court did not abuse its discretion in finding the recording of Mr. Beil's 9-1-1 call to be admissible pursuant to Davis.

(Doc. 7, RX 2, at 19; Urso, 195 Ohio App.3d at 680, 961 N.E.2d at 701.)

This ruling is in accord with applicable Supreme Court precedent. Urso has failed to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in Crawford and Davis.

Although the state court of appeals also found that the 911 recording would have been admissible as a present-sense impression, under Ohio Evid.R. 803, this court need not review that ruling. First, the court properly determined that the 911 recording was admissible as a non-testimonial statement. Second, the "clearly established rule" is that alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not generally within the purview of a federal habeas court. Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988). See also Estelle v. McGuire, 502 U.S. 62, 69-70 (1991); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.), cert. denied, 540 U.S. 930 (2003). This court must presume that the

26

Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings.  Small v. Brigano, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

Alleged state court errors of evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  Broom v. Mitchell, 441 F.3d 392, 406 (6th Cir. 2006), cert. denied, 549 U.S. 1255 (2007).  See also Bugh, 329 F.3d at 512.  Courts have defined the category of errors that are fundamentally unfair very narrowly.  Bugh, 329 F.3d at 512.  Urso has not made the case that his claim fits within this narrow category.  See generally doc. 10.

Urso has failed to establish that the state court decision concerning the admission of the 911 recording was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in Crawford and Davis.  The petition should not be granted on the basis of the third ground.

## V.  SUMMARY

Urso has failed to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as

27

determined by the Supreme Court.  The petition for a writ of habeas corpus should not be granted.


RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.


Dated:   Sept. 30, 2014          /s/ Kenneth S. McHargh
                                 Kenneth S. McHargh
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).